ALPERT et al., Appellants,

v.

KODEE TECHNOLOGIES et al., Appellees.

[Cite as *Alpert v. Kodee Technologies* (1997), 117 Ohio App.3d 796.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 70492.

Decided Jan. 27, 1997.

*Kahn, Kleinman, Yanowitz & Arnson, Michael H. Diamant, Ronald P. Friedberg* and *Matthew S. Friedman,* for appellants.

*Steuer, Escovar & Berk* and *David Paul Bradley,* for appellees.

STRAUSBAUGH, Judge.

Plaintiffs-appellants, Martin Alpert and Click Technologies, Inc., appeal from the dismissal of their declaratory judgment/injunctive relief action against defendants-appellees, Kodee Technologies and John J. House ("House" collectively), by the Court of Common Pleas of Cuyahoga County.[1] Appellants submit that the

---

1. Appellants, unaware that "Kodee Technologies" was a sole proprietorship operated by House, named Kodee Company as an individual defendant in their complaint. Appellants subsequently conceded that Kodee Technologies and House are one entity for purposes of the

dismissal with prejudice was unwarranted, as Ohio's long-arm statute and controlling Civil Rule vested jurisdiction in the trial court, an appropriate venue.

## I

Alpert formed Click Technologies, Inc. in 1992 ("Click"), an Ohio corporation with its principal place of business in Cleveland, for the purpose of designing products based upon his inventions. One of these inventions, a miniature circuit card with a retractable cord, was intended for use with personal computers and other related products. Alpert acted as the corporation's president as well as an officer and director.

In the spring and summer of 1994, Alpert and House, a California resident, discussed House's purchase of a forty-four-percent share of Click. The parties subsequently agreed to forgo the purchase, but agreed that Click would assign and transfer certain rights to House, including rights relating to the card and cord inventions.

Although additional documents were prepared, the conversations and occasional face-to-face meetings between these two individuals resulted in only one executed document, an agreement signed on April 26, 1995, in Boston, Massachusetts ("the agreement"). The agreement contained a provision that governed the proper venue for legal disputes, *i.e.*, "Venue will be determined by the legal residence of the defendant."

The complaint, filed by appellants on November 14, 1995, set forth that House conducted business under the name of "Kodee" at 6168 Cochran Road, Solon, Ohio, the premises of Valtronic Technology, Inc. ("Valtronic"). The gist of appellants' claims was that the agreement was either unenforceable because it failed to reduce the parties' true contractual intentions to writing or that House breached the terms of the legally enforceable agreement. Appellants also sought preliminary and permanent injunctive relief under Civ.R. 65.

On January 5, 1996, House filed a motion to quash service of process on Kodee, and to dismiss the complaint in toto for lack of personal jurisdiction or improper venue. House submitted that dismissal was warranted as to Kodee under *Patterson v. V & M Auto Body* (1992), 63 Ohio St.3d 573, 589 N.E.2d 1306, because the entity is a sole proprietorship owned by House. In citing the aforementioned forum-selection clause in support of the motion, House also

complaint and this appeal, but proffer that this distinction has no bearing on the outcome of the appeal.

Kodee Technologies, moreover, is not to be confused with Kodee Technologies, Inc. House incorporated Kodee Technologies, Inc. in January 1996 for the purpose of acquiring an asset from a third party, not Alpert and Click.

submitted that dismissal as to him was required, since he is a resident of the state of California. Otherwise, House was not subject to the trial court's jurisdiction because all or most of the negotiations with Alpert occurred outside the state of Ohio.

Appellants filed a memorandum on February 23, 1996 in opposition to House's jurisdictional motion. They first asserted that the venue provision was ineffectual because the April 26, 1995 agreement itself was not a legally enforceable document. Next, regardless of whether Kodee is a legal entity with the capacity to be sued, appellants referred to information revealed in House's deposition testimony and an affidavit from a former employee of House to demonstrate House's amenability to the jurisdiction of the Court of Common Pleas of Cuyahoga County. This information purportedly showed that House was operating Kodee out of the Valtronic facility in Solon, Ohio.

House filed a supplemental brief on March 8, 1996 in support of his motion to dismiss and quash service. He characterized appellants' position that the venue provision was ineffectual due to the agreement's unenforceability as putting the "cart before the horse." The venue provision either irrefutably warranted dismissal or House did not have sufficient minimum contacts with the state of Ohio to subject him to the jurisdiction of the trial court.

The trial court's March 13, 1996 order granting House's motion to quash service of process and to dismiss for lack of personal jurisdiction and venue led to this appeal and the following assignments of error:

"I. The trial court erred in granting House's motion to dismiss for lack of personal jurisdiction, since: (1) Ohio's long-arm statute and related Civil Rule permit Ohio to exercise jurisdiction over House; and (2) Ohio's exercise of jurisdiction over House comports with the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

"II. The trial court erred in granting House's motion to dismiss for lack of venue, since venue was clearly proper in Cuyahoga County pursuant to Civ.R. 3(B)(3), 3(B)(6), 3(B)(7) and/or 3(B)(10).

"III. The trial court erred in designating its dismissal of appellants' action as a dismissal 'with prejudice.' "

## II

Initially, House raised three issues in his motion to dismiss/quash service of process: (1) whether appellants could name Kodee as an individual defendant in

the action,[2] (2) whether the agreement's forum-selection clause governed venue, and (3) whether the trial court possessed personal jurisdiction over House. Any one or all of these issues could have led to the trial court's grant of the motion because the ruling was made without written opinion. Appellants' assignments of error focus primarily on these issues and are, therefore, addressed in an order that is expedient to this appeal.

## A

Appellants' second assignment of error concerns the trial court's dismissal of the complaint based upon the forum-selection clause. Appellants assert that the agreement's invalidity and unenforceability canceled the clause's effect. They argue that without the clause, the record amply demonstrates that the complaint was properly venued in the Court of Common Pleas of Cuyahoga County under Civ.R. 3(B).

█ The first issue raised by appellants in this assignment is whether the April 25, 1995 agreement was a binding contract between House, Alpert, and Click. If not, the effect of the forum-selection clause is irrelevant to the resolution of this appeal.

The agreement contained a provision that specified the preparation of a subsequent "more detailed agreement." There is authority for the proposition that a contract is not formed if the parties contemplate further action toward formalization or if a binding obligation rests upon a future agreement. See *Rice v. Wheeling Dollar Sav. & Trust* (1951), 155 Ohio St. 391, 44 O.O. 374, 99 N.E.2d 301; *N. Coast Cookies, Inc. v. Sweet Temptations, Inc.* (1984), 16 Ohio App.3d 342, 16 OBR 391, 476 N.E.2d 388; *Weston, Inc. v. Brush Wellman, Inc.* (July 28, 1994), Cuyahoga App. No. 65793, unreported, 1994 WL 393685. However, "[i]t is not the law that an agreement to make an agreement is *per se* unenforceable." *Normandy Place Assoc. v. Beyer* (1982), 2 Ohio St.3d 102, 105, 2 OBR 653, 656, 443 N.E.2d 161, 164. See *M.J. DiCorpo, Inc. v. Sweeney* (1994), 69 Ohio St.3d 497, 634 N.E.2d 203.

█ Two considerations are taken into account when determining the enforceability of an agreement that refers to future negotiations and/or agreements. These considerations are " 'whether the parties have manifested an intention to be bound by its terms and whether these intentions are sufficiently definite to be specifically enforced.' " *M.J. DiCorpo, Inc.*, 69 Ohio St.3d at 503, 634 N.E.2d at

---

**2.** This issue does not affect the viability of appellants' complaint because they named House as a defendant as well. See fn. 1, *supra*, and *Patterson v. V & M Auto Body* (1992), 63 Ohio St.3d 573, 589 N.E.2d 1306 (the individual who does business as a sole proprietorship under a different name remains personally liable for all obligations).

208, quoting *Normandy Place Assoc.*, 2 Ohio St.3d at 105–106, 2 OBR at 655–657, 443 N.E.2d at 163–165.

In the within case, House testified at deposition that he verbally agreed to lease space from Valtronic for the purpose of operating Scientific Solutions, Inc. ("SSI"), a division of Rexon/Tecmar, Inc. ("Rexon"). House entered into an "interim consulting agreement" with Cliff Wire whereby Wire was to perform any work necessary to transfer and reestablish the production of SSI's product line.

There is no dispute that House invested substantial sums of money in Click. According to him, he also "worked diligently" to prepare the technology and to secure a manufacturer for Alpert's inventions. House admitted further that when he and Alpert participated in Click, Click and Rexon entered into an agreement which permitted Rexon to market the fax modem developed by Click.

The record establishes that House and Alpert disagreed as to what type of interest House was going to hold in Alpert's inventions. However, they entered into a business relationship despite this disagreement, specifically through House's financial investment and the preparations with SSI/Rexon. These activities demonstrate that the parties intended to be bound by the design and manufacturing terms of the April 26, 1995 agreement. The agreement was thus enforceable between House, Alpert, and Click. *M.J. DiCorpo; Normandy Place Assoc.*

Since the agreement was enforceable, the next issue is whether the forum-selection clause was likewise enforceable. Forum-selection clauses are generally enforceable unless the clause is invalid due to fraud or overreaching, or enforcement would be unreasonable and unjust. *M/S Bremen v. Zapata Off–Shore Co.* (1972), 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513, 523. See *Kennecorp Mtge. Brokers, Inc. v. Country Club Convalescent Hosp., Inc.* (1993), 66 Ohio St.3d 173, 610 N.E.2d 987; *Barrett v. Picker Internatl., Inc.* (1990), 68 Ohio App.3d 820, 589 N.E.2d 1372.

Appellants, by exclusively relying on the absence of a valid contract, never challenged the clause in this respect in the court of common pleas and then in this appeal. For this reason, we decline to review the clause under the *Bremen* guidelines and those set forth in *Barrett.* Compare *Barrett* and *Cent. Ohio Graphics, Inc. v. O'Brien Business Equip., Inc.* (Mar. 28, 1996), Franklin App. No. 95APE08–1016, unreported, 1996 WL 145480 (issue of whether forum-selection clause is unenforceable due to fraud not addressed, since parties failed to allege fraud). See, generally, *Kalish v. Trans World Airlines* (1977), 50 Ohio St.2d 73, 4 O.O.3d 195, 362 N.E.2d 994; *AMF, Inc. v. Mravec* (1981), 2 Ohio App.3d 29, 2 OBR 32, 440 N.E.2d 600; *Evans v. Kovacs* (Aug. 18, 1994),

Cuyahoga App. No. 66114, unreported, 1994 WL 449551 (new legal theories cannot be considered on appeal).

■ Consequently, the forum-selection clause inserted into the April 25, 1995 agreement by House and Alpert controlled the venue of appellants' litigation. The clause specifically designated proper venue as the defendant's state of residence, here, California. Appellants' suggestion that Ohio is the defendant's state of residence as a result of Kodee's local activities is legally ineffectual because Kodee and House are deemed one entity, *Patterson, supra,* and there is no dispute that House does not "reside" in Ohio. In fact, appellants conceded House's California residency in their motion for designation of process server, a concession carried into the trial court's accompanying order dated December 19, 1995.

■ Assuming that the trial court herein found, as we do, that venue in the Court of Common Pleas of Cuyahoga County was contractually precluded, Civ.R. 3(D) provides:

"When a court, upon motion of any party or upon its own motion, determines: (1) that the county in which the action is brought is not a proper forum; (2) that there is no other proper forum for trial within this state; and (3) that there exists a proper forum for trial in another jurisdiction outside this state, *the court shall stay the action* upon condition that all defendants consent to the jurisdiction, waive venue, and agree that the date of commencement of the action in Ohio shall be the date of commencement for the application of the statute of limitations to the action in that forum in another jurisdiction which the court deems to be the proper forum. If all defendants agree to the conditions, the *court shall not dismiss the action,* but the action *shall be stayed* until the court receives notice by affidavit that plaintiff has recommenced the action in the out-of-state forum within sixty days after the effective date of the order staying the original action. *If the plaintiff fails to recommence the action in the out-of-state forum within the sixty day period, the court shall dismiss the action without prejudice.* If all defendants do not agree to or comply with the conditions, the court shall hear the action." (Emphasis added.)

The parties, therefore, could have agreed to the issuance of a stay in order for appellants to recommence the action in a proper forum, an option suggested by House in his motion to dismiss appellants' complaint. An outright dismissal of appellants' complaint was premature under the circumstances of this case. See *Barrett; Romanchik v. Lucak* (1988), 44 Ohio App.3d 215, 542 N.E.2d 699; *Price v. Wheeling Dollar Sav.* (1983), 9 Ohio App.3d 315, 9 OBR 581, 460 N.E.2d 264; *Cent. Ohio Graphics, Inc., supra; Motorists Mut. Ins. Co. v. Otto* (May 20, 1994), Portage App. No. 93–P–0028, unreported, 1994 WL 228170; *Ridenour v. Ivory,*

*Inc.* (Apr. 19, 1990), Cuyahoga App. No. 56902, unreported, 1990 WL 48963. Cf. *Terrell v. White* (1995), 104 Ohio App.3d 789, 663 N.E.2d 397; *Singleton v. Denny's Inc.* (1987), 36 Ohio App.3d 225, 522 N.E.2d 1097; and *State ex rel. Schrader v. Vilevac* (Sept. 28, 1994), Summit App. No. 16710, unreported, 1994 WL 527889 (if an action is properly filed in Ohio, but in an improper venue, it should be transferred, not dismissed, under Civ.R. 3[C][1] ).

In conclusion, appellants should have filed their complaint in the state of California. Since venue was improper in the state of Ohio, the trial court should have stayed the proceedings to allow appellants to recommence the action in the proper forum. Civ.R. 3(D). Dismissal is warranted only if appellants fail to recommence the action within sixty days of the entry of the stay. *Id.*

This court is aware of House's pending litigation in a California federal district court. The record presented on appeal is sketchy with regard to the issues that were presented in that action. Although the action may concern the allegations raised by appellants in their complaint, Civ.R. 3(D) and controlling case law mandate a reversal of the trial court's dismissal and a remand of the action as explained above.

Appellants' second assignment of error is sustained.

B

Appellants, in the first assignment, argue that the trial court erroneously granted House's motion to dismiss for lack of personal jurisdiction. They submit that the record demonstrates satisfaction of both the long-arm statute and applicable Civil Rule, as well as the constitutional requirements, for the trial court's exercise of that jurisdiction over House. This issue is moot, since a determination that the trial court possessed personal jurisdiction over House does not alter our conclusion that the trial court could not proceed to hear appellants' complaint based upon the forum-selection clause. App.R. 12(A)(1)(c).

Appellants' first assignment of error is overruled.

C

The third and final assignment addresses the propriety of the trial court's dismissal of appellants' complaint with prejudice. Appellants are correct in their position that a dismissal for lack of personal jurisdiction operates as a failure otherwise than on the merits. See Civ.R. 41(B)(4).[3] If dismissal for lack of personal jurisdiction was appropriate in this case, the action would be remanded to the trial court for the purpose of issuing a journal entry that reflects a

---

3. Civ.R. 3(D) likewise provides that a dismissal under the section is without prejudice.

dismissal without prejudice due to lack of personal jurisdiction. See *Bank One, Cleveland, NA v. Beasley* (Jan. 19, 1995), Cuyahoga App. Nos. 67658 and 67679, unreported, 1995 WL 23130. However, given the disposition in appellants' second assignment, the issue is moot. App.R. 12(A)(1)(c).[4]

Appellants' third assignment of error is overruled.

Judgment reversed and cause remanded for proceedings to be consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

PORTER, P.J., and KARPINSKI, J., concur.

DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, sitting by assignment.

---

4. House refers to this court's limited remand of the case to the trial court for the purpose of securing such an entry prior to the time of hearing on appeal. He also refers to the trial court's issuance of an entry that reflects a dismissal without prejudice. These claims are not confirmed by any documents from either this court or the trial court, or by entries in the trial court's docket or this court's schedule.